IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES *ex rel.* | ) | |
| VIRAN ROGER HOLDEN, individually, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| | ) | |
| MERCY HOSPITAL SPRINGFIELD f/k/a | ) | |
| ST. JOHN'S REGIONAL HEALTH CENTER | ) | |
| and MERCY CLINIC SPRINGFIELD | ) | |
| COMMUNITIES f/k/a ST. JOHN'S | ) | |
| CLINIC, INC., | ) | *IN CAMERA* |
| | ) | AND UNDER SEAL |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

*Qui tam* Plaintiff-Relator Viran Roger Holden ("Plaintiff-Relator"), by and through his undersigned attorneys, on behalf of the United States of America and himself individually, alleges as follows in support of his Complaint against Defendants Mercy Hospital Springfield and Mercy Clinic Springfield Communities, based upon personal knowledge and relevant documents:

## NATURE OF ACTION

1. This is a *qui tam* action on behalf of the United States of America against Defendants Mercy Hospital Springfield and Mercy Clinic Springfield Communities (collectively "Defendants") arising from Defendants' knowing violation of Federal Civil False Claims Act, 31 U.S.C. §3729 *et seq.*, as amended ("the FCA" or "the Act"). Specifically, Defendants have systematically and knowingly submitted false claims to Medicare, and have willfully and knowingly conspired to submit false claims.

## JURISDICTION AND VENUE

2. Jurisdiction exists pursuant to 31 U.S.C. ¶¶ 3730(b)(1) and 3732, because this action seeks remedies on behalf of the United States for violations of 31 U.S.C. ¶ 3729 *et seq.* by Defendants and Defendants can be found and transact business in this District.

3. Venue is proper in the Western District of Missouri pursuant to 31 U.S.C. § 3732(a) because Defendants can be found in and transact or have transacted business in this district. In addition, statutory violations, as alleged herein, occurred in this district.

4. To the extent that there has been a public disclosure unknown to Plaintiff-Relator, Plaintiff-Relator is an original source as defined by 31 U.S.C. §3730(e)(4). He has direct and independent knowledge of the information upon which the allegations set forth herein are based and has voluntarily provided the information upon which this Complaint is based to the United States prior to filing the instant *qui tam* action. Specifically, Plaintiff-Relator provided the United States with documentation via written disclosures on June 2, 2015 and June 3, 2015.

## PARTIES

5. The Government Plaintiff in this action is the United States of America. Pursuant to the provisions of 31 U.S.C. §3730(b)(1), Plaintiff-Relator Viran Roger Holden is suing in the name of and on behalf of the United States of America.

6. Defendant Mercy Clinic Springfield Communities ("Mercy Clinic") is a domestic non-profit corporation that conducts business through multiple offices and clinics on the Mercy Springfield Campus, including Mercy Clinic Cancer & Hematology (the "Cancer Clinic"), located within the Chub O'Reilly Cancer Center. Mercy Clinic was formerly known as St. John's Clinic, Inc., with its change of name recognized by the State of Missouri on November 15, 2011. Mercy Clinic's address (as reported to the Missouri Secretary of State) is 1965 S. Cherokee, Springfield,

Missouri, while the Chub O'Reilly Cancer Center is located at 2250 S. Fremont, Springfield, Missouri. During all times relevant herein, Defendant Mercy Clinic employed all physicians practicing in the Cancer Clinic.

7. Defendant Mercy Hospital Springfield ("Mercy Hospital"), at all times mentioned herein, is a domestic non-profit corporation that operates a hospital and medical facilities. Mercy Hospital was formerly known as St. John's Regional Health Center, with its name change recognized by the State of Missouri on November 15, 2011, and is located at 1235 E. Cherokee St., Springfield, MO 65804.

8. Viran Roger Holden, M.D., PhD ("Plaintiff-Relator") resides in Springfield, Missouri. Plaintiff-Relator is a medical doctor licensed in the State of Missouri and board certified in medical oncology and hematology. Plaintiff-Relator has a PhD in microbiology and immunology. Plaintiff-Relator was employed by Mercy Clinic as a medical oncologist in Springfield, Missouri from approximately 2005 until May 2015. During that time period, Plaintiff-Relator received information relating to the ownership of the Mercy Oncology Infusion Center – Chub O'Reilly Cancer Center ("Infusion Center") and physician compensation within the Cancer Clinic. At all times relevant herein until on or about May 2012, Plaintiff-Relator was also the Chair of the Mercy Clinic Oncology Department and, in that capacity, Plaintiff-Relator received information regarding concerns and complaints of physicians practicing in the Cancer Clinic, including those related to physician compensation.

## FILING UNDER SEAL

9. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint is filed *in camera* and will remain under seal and will not be served on the Defendants until the Court so orders. A copy of the Complaint and a written disclosure of substantially all material evidence and information in

3

the possession of Plaintiff-Relator will be served on the United States pursuant to 31 U.S.C. § 3730(b)(2) and FED.R.CIV.P. 4(i). The written disclosure is incorporated herein by reference. Plaintiff-Relator's previous written disclosures to the United States of June 2, 2015 and June 3, 2015 are incorporated herein by reference.

## FACTUAL BACKGROUND

10. The Infusion Center and the Cancer Clinic are located in the Chub O'Reilly Cancer Center.

11. Upon information and belief, until sometime in 2009, the Infusion Center was owned by Defendant Mercy Clinic.

12. Upon information and belief, while Defendant Mercy Clinic owned the Infusion Center, profits from the Infusion Center were distributed among physicians practicing in the Cancer Clinic as compensation, under a collection compensation model.

13. Upon information and belief, in or about 2009, Defendant Mercy Hospital determined that the Infusion Center would generate greater profits if it were owned by Defendant Mercy Hospital, because Defendant Mercy Hospital was allegedly eligible for the 340B Drug Pricing Program. In addition, if patients were infused at a facility classified as "hospital outpatient," the infusion center could bill and collect more because the services provided (chemotherapy administration) were designated as outpatient hospital services.

14. Upon information and belief, in or about 2009, ownership of the Infusion Center was transferred from Defendant Mercy Clinic to Defendant Mercy Hospital.

15. Upon information and belief, following the transfer of ownership, the Infusion Center continued to operate in the exact same physical location as before ownership was transferred.

16. Upon information and belief, Defendant Mercy Hospital leased both the space for the Infusion Center and the non-physician employees working in the infusion center from Defendant Mercy Clinic.

17. Upon information and belief, subsequent to the transfer of ownership of the Infusion Center, patients would routinely present to the Clinic portion of the Chub O'Reilly Cancer Center for a clinical visit with their physician oncologist. Said visit was designated as an Evaluation and Management visit with the physician and the patient would pay a co-pay to Defendant Mercy Clinic. The patients would then be sent down the hall to the Infusion Center where they would pay another co-pay to Defendant Mercy Hospital (for hospital outpatient services) and receive chemotherapy administration.

18. Upon information and belief, following the transfer of ownership of the Infusion Center, Defendant Mercy Hospital began purchasing drugs for use in the Infusion Center under the 340B Drug Pricing Program; this resulted in substantial cost savings on those drugs for Defendant Mercy Hospital, and ultimately increased Defendant Mercy Hospital's revenue by approximately $10,000,000.00 annually.

19. Upon information and belief, Defendant Mercy Hospital did not pass the savings it obtained when purchasing drugs for use in the Infusion Center under the 340B Drug Pricing Program to patients of the Infusion Center.

20. Upon information and belief, prior to and after the transfer of ownership of the Infusion Center, the physicians practicing in the Cancer Clinic expressed concerns about losing a substantial portion of the income they had received under the collection compensation model as a result of the loss of ownership of the Infusion Center.

5

Case 6:15-cv-03283-DGK   Document 1   Filed 06/30/15   Page 5 of 15

21. Upon information and belief, the physicians practicing in the Cancer Clinic were reassured by Defendants Mercy Clinic and Mercy Hospital that they would be "made whole" for any income they stood to lose as a result of the transfer of ownership of the Infusion Center.

22. Upon information and belief, in March 2009, the physician compensation model for physicians practicing in the Cancer Clinic was changed to include "margin replacement based on work RVU for drug administration in the hospital department." The physicians were told that the new compensation model was designed to make them "whole" for the income they would have lost as a result of the transfer of the Infusion Center, by the payment of a newly calculated work RVU for each patient they sent the to the Infusion Center.

23. Upon information and belief, the new work RVU for drug administration in the hospital department was paid by Defendant Mercy Hospital to Defendant Mercy Clinic, and then paid by Defendant Mercy Clinic to physicians practicing in the Cancer Clinic.

24. Upon information and belief, the new "work RVU for drug administration in the hospital department" was not calculated based on physician work, clinical expense, or malpractice overhead, but rather was "solved for" by working backwards from a desired level of overall compensation.

25. Upon information and belief, the 2013-2014 work RVU for drug administration in the hospital department, which required only that a physician be immediately available, was approximately 500 percent of the work RVU for in-clinic work where the physician was actively involved in patient care. Because of the physical location of the Infusion Center being connected to the Cancer Clinic, physicians did not leave their Clinic work space while their patients were being infused at the Infusion Center.

26. Upon information and belief, beginning in or around 2009, Defendant Mercy Hospital also paid "management fees" to Defendant Mercy Clinic on behalf of the physicians practicing in the Cancer Clinic. These "management fees" were purportedly paid for the physicians' management of the Infusion Center, however, physicians practicing in Cancer Clinic were not responsible for management of the Infusion Center. In addition, upon information and belief, Mercy Clinic paid substantial Medical Director fees to Dr. Gary Hoos, even though said fees did not represent payment for services he provided beyond his required clinical duties.

## COUNT ONE

## FALSE CLAIM ACT LIABILITY FOR VIOLATION OF 42 U.S.C. § 1395nn

### (against Defendant Mercy Hospital Springfield)

27. Plaintiff-Relator adopts and incorporates by reference paragraphs 1 through 26 as though fully set forth herein.

28. Defendant Mercy Hospital's financial relationship with Defendant Mercy Clinic, whereby Defendant Mercy Hospital pays Defendant Mercy Clinic on the behalf of the physicians practicing in the Cancer Clinic, does not meet the fair market and commercial reasonableness requirements of the financial relationship exception to the referral prohibition for designated health services under the provisions of The Ethics in Patient Referrals Act of 1989, 42 U.S.C. § 1395nn ("Stark Law"). Defendant Mercy Hospital knew that the compensation arrangement did not meet the fair market value and commercial reasonableness requirements of the Stark Law.

29. Defendant Mercy Hospital's financial relationship with Defendant Mercy Clinic, whereby Defendant Mercy Hospital paid "management fees" to Defendant Mercy Clinic on behalf of the physicians practicing in the Cancer Clinic, does not meet the fair market and commercial reasonableness requirements of the financial relationship exception to the referral prohibition for

designated health services under the provisions of Stark Law.  Defendant Mercy Hospital knew that the compensation arrangement did not meet the fair market value and commercial reasonableness requirements of the Stark Law.

30. Referrals by the physicians practicing in the Cancer Clinic to the Infusion Center (owned by Defendant Mercy Hospital) for designated health services, as defined in 42 U.S.C. § 1395nn(h)(6), were prohibited referrals under 42 U.S.C. § 1395nn(a)(1)(A).

31. Defendant Mercy Hospital  knowingly and willfully violated the provisions of 42 U.S.C. § 1395nn(a)(1)(B) by presenting bills for designated health services furnished pursuant to referrals from the physicians practicing in the Cancer Clinic, which were prohibited by the Stark Law.

32. Defendant Mercy Hospital knowingly and willfully submitted false claims to the government by certifying that all claims submitted were in compliance with all applicable statutes and regulations when Defendant knew that submission of these claims was prohibited under the Stark Law.

33. The United States Government, unaware of the falsity of the claims and in reliance on the accuracy thereof, paid the claims for the prohibited referrals.

WHEREFORE, Plaintiff-Relator, on behalf of himself and the United States Government, requests the following relief:

34. Judgment against Defendant Mercy Hospital in the amount of three (3) times the amount of damages the United States of America has sustained, plus a civil penalty of $11,000 for each violation of 31 U.S.C. § 3729 and the appropriate fines and penalties for violating the protective federal laws applicable to the fraudulent and false conduct and the costs of this action with interest;

35. That the Plaintiff-Relator be awarded all costs incurred, including reasonable attorneys' fees;

36. In the event the United States proceeds with this action, Plaintiff-Relator be awarded any appropriate amount for disclosing evidence or information that the United States did not possess when this action was disclosed to the government. The amount awarded to the Plaintiff-Relator should include the results of Government actions or settlement of claims resulting from the expansion of claims through the Government's further investigation directly generated from or attributable to Plaintiff-Relator's information; and

37. Such other relief as this Court deems just and appropriate.

## COUNT TWO

## FALSE CLAIMS ACT LIABILITY FOR VIOLATION OF 42 U.S.C. § 1320a-7b(b)(2)

### (against Defendant Mercy Hospital Springfield)

38. Plaintiff-Relator adopts and incorporates by reference paragraphs 1 through 37 as though fully set forth herein.

39. Defendant Mercy Hospital's financial relationship with Defendant Mercy Clinic, whereby Defendant Mercy Hospital pays Defendant Mercy Clinic on the behalf of the physicians practicing in the Cancer Clinic, was not commercially reasonable and far exceeded the fair market value for the services provided. This excess compensation was paid to induce the physicians practicing in the Cancer Clinic to continue to refer patients to the Infusion Center for services for which payment was made in whole or in part under a Federal healthcare program.

40. Defendant Mercy Hospital knowingly and willfully entered into the financial relationship, fully aware that it was not commercially reasonable and provided for compensation in excess of and exceeded the fair market value of the services provided, with the express intention

9

Case 6:15-cv-03283-DGK   Document 1   Filed 06/30/15   Page 9 of 15

of capturing all referrals for medical services made by the physicians practicing at the Cancer Clinic.

41. Defendant Mercy Hospital knowingly and willfully violated the provisions of 42 U.S.C. § 1320a-7b(b)(2) ("The Anti-kickback Statute) by paying remuneration to induce referrals by the physicians practicing at the Cancer Clinic to Mercy Hospital.

42. Defendant Mercy Hospital knowingly and willfully submitted false claims to the government by certifying that all claims for these prohibited referrals were submitted in compliance with the applicable statutes and regulations when Defendant knew that these claims arose out of illegal referrals under the provisions of The Anti-kickback Statute.

43. The United States Government, unaware of the illegality of the referrals, and in reliance of the accuracy of the representations and certifications of Defendant Mercy Hospital made in submissions of those claims, paid the claims for the illegal referrals.

WHEREFORE, Plaintiff-Relator, on behalf of himself and the United States Government, requests the following relief:

44. Judgment against Defendant in the amount of three (3) times the amount of damages the United States of America has sustained, plus a civil penalty of $11,000 for each violation of 31 U.S.C. § 3729 and the appropriate fines and penalties for violating the protective federal laws applicable to the fraudulent and false conduct and the costs of this action with interest;

45. That the Plaintiff-Relator be awarded all costs incurred, including reasonable attorneys' fees;

46. In the event the United States proceeds with this action, Plaintiff-Relator be awarded any appropriate amount for disclosing evidence or information that the United States did not possess when this action was disclosed to the government. The amount awarded to the

Plaintiff-Relator should include the results of Government actions or settlement of claims resulting from the expansion of claims through the Government's further investigation directly generated from or attributable to Plaintiff-Relator's information; and

47. Such other relief as this Court deems just and appropriate.

## COUNT THREE

## FALSE CLAIM ACT LIABILITY FOR VIOLATION OF 42 U.S.C. § 1395nn

### (against Defendant Mercy Clinic Springfield Communities)

48. Plaintiff-Relator adopts and incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

49. Defendant Mercy Clinic's financial relationship with Defendant Mercy Hospital, whereby Defendant Mercy Clinic received payments from Defendant Mercy Hospital on the behalf of the physicians practicing in the Cancer Clinic, does not meet the fair market and commercial reasonableness requirements of the financial relationship exception to the referral prohibition for designated health services under the provisions of The Ethics in Patient Referrals Act of 1989, 42 U.S.C. § 1395nn ("Stark Law"). Defendant Mercy Clinic knew that the compensation arrangement did not meet the fair market value and commercial reasonableness requirements of the Stark Law.

50. Defendant Mercy Clinic's financial relationship with Defendant Mercy Hospital, whereby Defendant Mercy Clinic received "management fees" from Defendant Mercy Hospital on behalf of the physicians practicing in the Cancer Clinic, does not meet the fair market and commercial reasonableness requirements of the financial relationship exception to the referral prohibition for designated health services under the provisions of Stark Law. Defendant Mercy Clinic knew that the compensation arrangement did not meet the fair market value and commercial reasonableness requirements of the Stark Law.

51. Referrals by the physicians practicing in the Cancer Clinic to the Infusion Center (owned by Mercy Hospital) for designated health services, as defined in 42 U.S.C. § 1395nn(h)(6), were prohibited referrals under 42 U.S.C. § 1395nn(a)(1)(A).

52. Defendant Mercy Clinic, acting through the physicians practicing in the Cancer Clinic, knowingly and willfully violated the provisions of 42 U.S.C. § 1395nn(a)(1)(A) by making prohibited referrals for designated health services to the Infusion Center. Defendant Mercy Clinic knowingly and willfully caused false claims to be submitted to the government by certifying that all claims submitted were in compliance with all applicable statutes and regulations when Defendant Mercy Clinic was aware that submission of the claims for these referrals was prohibited under the Stark Law.

53. The United States Government, unaware of the falsity of the claims and in reliance on the accuracy thereof, paid the claims for the prohibited referrals.

WHEREFORE, Plaintiff-Relator, on behalf of himself and the United States Government, requests the following relief:

54. Judgment against Defendant Mercy Clinic in the amount of three (3) times the amount of damages the United States of America has sustained, plus a civil penalty of $11,000 for each violation of 31 U.S.C. § 3729 and the appropriate fines and penalties for violating the protective federal laws applicable to the fraudulent and false conduct and the costs of this action with interest;

55. That the Plaintiff-Relator be awarded all costs incurred, including reasonable attorneys' fees;

56. In the event the United States proceeds with this action, Plaintiff-Relator be awarded any appropriate amount for disclosing evidence or information that the United States did

not possess when this action was disclosed to the government. The amount awarded to the Plaintiff-Relator should include the results of Government actions or settlement of claims resulting from the expansion of claims through the Government's further investigation directly generated from or attributable to Plaintiff-Relator's information; and

57. Such other relief as this Court deems just and appropriate.

## COUNT FOUR

## FALSE CLAIM ACT LIABILITY FOR VIOLATION OF 42 U.S.C. § 1320a-7b(b)(2)

### (against Defendant Mercy Clinic Springfield Communities)

58. Plaintiff-Relator adopts and incorporates by reference paragraphs 1 through 57 as though fully set forth herein.

59. Defendant Mercy Clinic's financial relationship with Defendant Mercy Hospital, whereby Defendant Mercy Clinic receives remuneration from Defendant Mercy Hospital on behalf of the physicians practicing in the Cancer Clinic, was not commercially reasonable and far exceeded the fair market value for the services provided. This excess compensation was paid to induce the physicians practicing in the Cancer Clinic to continue to refer patients to the Infusion Center for services for which payment was made in whole or in part under a Federal healthcare program.

60. Defendant Mercy Clinic knowingly and willfully entered into the financial relationship, fully aware that it was not commercially reasonable and provided for compensation in excess of and exceeded the fair market value of the services provided.

61. Defendant Mercy Clinic knowingly and willfully violated the provisions of 42 U.S.C. § 1320a-7b(b)(2) ("The Anti-kickback Statute) by receiving remuneration in return for the

13

Case 6:15-cv-03283-DGK   Document 1   Filed 06/30/15   Page 13 of 15

referrals of the physicians practicing at the Cancer Clinic to the Infusion Center owned by Mercy Hospital.

62. Defendant Mercy Clinic knowingly and willfully caused the submission of false claims to the government by certifying that all claims submitted were in compliance with all applicable statutes and regulations when Defendant Mercy Clinic was aware that submission of claims for these referrals was prohibited under the Stark Law.

63. The United States Government, unaware of the falsity of the claims and in reliance on the accuracy thereof, paid the claims for the prohibited referrals.

WHEREFORE, Plaintiff-Relator, on behalf of himself and the United States Government, requests the following relief:

64. Judgment against Defendant Mercy Clinic in the amount of three (3) times the amount of damages the United States of America has sustained, plus a civil penalty of $11,000 for each violation of 31 U.S.C. § 3729 and the appropriate fines and penalties for violating the protective federal laws applicable to the fraudulent and false conduct and the costs of this action with interest;

65. That the Plaintiff-Relator be awarded all costs incurred, including reasonable attorneys' fees;

66. In the event the United States proceeds with this action, Plaintiff-Relator be awarded any appropriate amount for disclosing evidence or information that the United States did not possess when this action was disclosed to the government. The amount awarded to the Plaintiff-Relator should include the results of Government actions or settlement of claims resulting from the expansion of claims through the Government's further investigation directly generated from or attributable to Plaintiff-Relator's information; and

67. Such other relief as this Court deems just and appropriate.

## JURY DEMAND

68. Plaintiff-Relator demands a trial by jury on all claims.

Respectfully Submitted,

PLACZEK WINGET & PLACZEK

By: /s/ Jenifer M. Placzek___
      MATHEW W. PLACZEK
      Missouri Bar No. 24819
      mplaczek@pwplawfirm.com
      JENIFER M. PLACZEK
      Missouri Bar No. 57293
      jplaczek@pwplawfirm.com
      PAUL S. JAMESON
      Missouri Bar No. 62979
      4905 S. National Ave. Ste. A-112
      Springfield, MO  65810
      Phone:  417-883-4000
      *Attorneys for Plaintiff-Relator*.

DATED:  June 30, 2015